Company, No. 20-2544, and we'll hear from Appellant's counsel. First off, we want to know if you'd like to reserve time for a rebuttal. Yes, Your Honor, I would like to reserve three minutes. Okay, that will be granted. Now, I'll let you get off the podium. Before we get started, I just want to remind you that you, of course, received your motion papers, and one of the reasons why we called you in today was to just find out sort of what the implications of this all are, both from you and your adversary, and if there's anything more that has maybe even happened since you filed your papers. And then we can get to the merits of the case as well. I must say, I would be interested to know whether you have asked for coverage from the insurance company on the amended complaint. Not at this point, Your Honor. Well, isn't that the logical thing to do first? Respectfully, Your Honor, may I at least introduce myself? My name is David Barry. I'm the attorney for Carl Hemphill and MJ Labor Solutions, the policy holders. The complaint has not been amended. There's been a motion to amend. So at this stage in the game, the complaint still stands as it was amended. What this motion did is amplify the facts that covered claims, namely negligent misrepresentation, have been pled in the underlying complaint, and that the plaintiffs in the underlying case are amplifying that, clarifying that, by seeking their proposed amendment. But at this stage in the game, the original complaint stands as it is. It is not amended. We'll have to wait for a judgment period. When did you notify the insurance company of this new development? As soon as I received the amendment, I sent it to the insurance company, Mr. Bassett, their representative. And even before I filed my motion, literally as soon as I received it, I sent it off to Mr. Bassett. Okay. Well, you obviously, you let us know what happens. I'm sure you will. But we'd be very interested. All right. So would you like me to go on with my argument, or is there anything else you'd like to discuss there? That would be fine. Okay. Reasonable expectations is an interesting issue, so. That's why I put it first in my brief, actually. I'm not trying to say, well, that's why I put it first in my brief, because I think that's really why we're here. And you have to remember that this case is an appeal from a 12B6 motion. District Court, Judge McHugh said we failed to plead a cause of reasonable inferences from the complaint. All factual allegations are set forth as true. So we set forth a claim for reasonable expectations in the complaint. He acknowledged that we set forth the claim for reasonable expectations in the complaint. And then he went on to analyze reasonable expectations, but his analysis really was a sidestep. What he did was he said that the complaint is clearly worded, there's no ambiguity, and so reasonable expectations does not apply. That's not what this law has held, what this court has held in many cases, including, most importantly from my cases that are cited therein, the court very clearly says that the doctrine of reasonable expectations should look at the coverage from the focal point of the insured in the insurance transaction, regardless of ambiguity or lack thereof. Judge McHugh said no ambiguity, and so I'm not going to look at reasonable expectations, so right there I think it's an error of failing to follow binding precedent from this case. Well, also, I mean, it seems that other, that our jurisprudence has also identified deception. Is there deception here? As a reason to apply reasonable expectations? No, Your Honor, it's not deception, it's just a function of, there was an underlying, there was a prior complaint, the Erudium matter, it's set forth in the materials. The Erudium matter is very similar to the Castillo complaint. But there was an express negligent misrepresentation claim in that, was there not? Fraudulent misrepresentation. Okay. Erudium is even more difficult, if you sort of look at it. Okay, but it's, it's, that's a different claim. Yeah, but it's a claim for fraud, it's an intentional act. In our case, intent is not alleged. The word deception is used. And the word deception does not necessarily require intent to prove misrepresentation. Deception can also be a negligent misrepresentation. But the word deception, basically it's a contract claim, right? And you're asking for tort damages, where the plaintiff is asking for, I'm sorry, the plaintiff is asking for tort damages, and in a, in a contract case, and there's nothing to it. Well, Your Honor, the count, I believe it's 11 of the underlying Castillo complaint, sets forth the cause of action for damages under the Pennsylvania unfair trade practices consumer protection law catch-all provision, paragraph 21. And the Pennsylvania court, in a matter that is not cited in my materials, but I have the citation available for the court, the Pennsylvania Supreme Court in the case of Gregg v. Ameriprise Financial, Incorporated, 245 Atlantic 3rd, 637 Pennsylvania Supreme Court, 2021. The court said that any deceptive negligent misrepresentation may be used to establish cause of action under the unfair trade practices act. So in paragraph 380 of Castillo's, the with regard to representations made about the housing, that consumer protection claim can be a covered claim under the policy. It's not a contract claim that might otherwise not be covered. Typically in these reasonable expectation cases, the insurer has created an expectation first, and then issued a policy that contradicts the expectation that has been created. And the idea is that once the customer relies on the reasonable expectation, we're going to enforce that against even clear policy language. But here, there was a policy first, and then in the Eritrea case, allegedly a reasonable expectation was created, albeit under a reservation of rights. And the policy never changed. Do you have any cases that deal with the sequence that we're faced with here, where the policy came first, and then the reasonable expectation was arguably created? I think Murphy case, I'd have to take a look at exactly how it all happened, but the Murphy case, which is cited extensively in our materials, that's the attorney malpractice claims, various statutes, limitations, and the carrier covered the claim in the first instance and not in the second instance. And Murphy's very similar to our case in that in the case where the insurance carrier covered, namely the first case, the coverage question was actually more difficult than in the case where they disclaimed. So you're talking about really the crux of your question is a little bit about unilateral change. Unilateral change is not required for reasonable expectations to apply. And you can argue that the unilateral change came in the way the insurance carrier applied the coverage. So it's an implied, it's an implicit unilateral change. At one stage they're saying, yes, we cover this type of complaint. And in fact, that was a pretty tough call. And the insurer thinks, I'm glad I got coverage for that. And then the second case comes along and the insurer looks at it and says, well, this is much easier than the first one. They covered the first one. After they covered the first one, I looked at my business and I said, I need some more insurance. The policy had an extended reporting provision. I paid additional premium to get my extended reporting. The carrier didn't do anything after that first case, after it settled Erudea. It did not settle Erudea and look for some sort of policyholder release. It did not even send a letter to the policyholder saying, hey, we're covering you in this case because you're a good guy. But there was a reservation of rights and they were investigating it. It wasn't saying they never came out and said, even implicitly, you're clearly covered and we're in. You have to consider that, right? To a policyholder? No, I don't. Because you know what? It's like Charlie Brown's teacher. Womp, womp, womp. They don't understand all that stuff. What they do is they look at this. That's what this reasonable expectation document is all about. It's about the expertise in insurance policy and the relative lack of expertise of the policyholders. In fact, they've even started extending reasonable expectations to sophisticated insurers where originally they didn't do that. Who gets to decide if one's claimed expectation is reasonable? I guess that would be a jury decision. I don't guess that would be a jury decision for the record. So that's the reasonable expectations doctrine. Unilateral change is not required. Ambiguity is not required. What the court has to do is make the focal point of its analysis and what the carrier also has to do, is make the focal point of its analysis on the totality of the insurance transaction, the entirety of the insurance transaction. In this case, the entirety of the insurance transaction included erudite, covered, payment of additional premium for the extended reporting period, and then Castillo, a case which on its face claims a negligent reasonable or claims a reasonable expectations claim upon which damages are alleged, namely the housing and its start date. And also the unfair trade practices and consumer protection law. In both of those cases, the plaintiff in that case would not have been precluded from proving the case by evidence of negligent misrepresentation. So what... Did what you're suggesting, though, violate what the Pennsylvania Supreme Court has told us about the four corners of the policy? If we go out and start to analyze other cases, isn't that a violation of the four corners rule? Well, look, the four corners rule, number one, is a very harsh way to analyze these things. And number two... Well, that's not our choice. I know. The Pennsylvania courts have said we accept reasonable expectations. That's fine. You can look at the totality of the circumstances. The place to begin, it says, is look at the four corners. But that's not the end. The end is the totality of the insurance transaction. What happened between the parties? That's, I think, where the analysis has to go. And by the way, the insurance company doesn't get to look at this complaint on the covered claim side as a trial judge analyzing a 12B6 where all the elements met. The insurance company has to look and say, based upon what was pled here, is there a plausible claim that's covered? And if it's plausible, based upon the facts that are alleged, it doesn't say you have to plead every element. It doesn't go into 12B6 standards. The standard is, is it plausible based upon what's pled here, giving every benefit to the policyholder? So we have a covered claim, and that covered claim is pled in the terms of negligent misrepresentation and the unfair trade practices claim. And we also have a claim under the reasonable expectations doctrine, which- But your time is up, counsel. Oh, I'm sorry. Do you have anything more? I just want to make sure I understand. Your position on the reservation of rights letter is, it's meaningless, right? We should ignore it, because it's wah, wah, wah. Well, it's not meaningless. It's part of the entirety of the transaction between the parties. And in the entirety of the transaction of the parties, the insurance carrier said one thing, and then without ever pointing to any fact that said, well, no, there is no coverage, they went ahead and covered. So by implication, they didn't have that fact. Okay. Thank you. Do you have anything more? Okay. Thank you, counsel. We'll get you on rebuttal. Good morning, Your Honors. May it please the Court. My name is Brian Bassett. I represent the Appali Landmark American Insurance Company. As to the initial question of the impact of the proposed amended complaint in the airline lawsuit, counsel is correct. It's at this point solely a proposed amended complaint. It has not been tendered to my client to consider for coverage, and I think it would be premature at this point to comment on the impact that that would have on our position. But your client has not come up with anything on this, right? No, we only received it about 48 hours ago, Your Honors. No, we have not addressed what, if any, impact it would have on our coverage position. But I would say, regardless of that fact, the present issue remains subject to the Court's consideration, most notably because at the point in time that the initial complaint was filed and was tendered to Landmark, the allegations are that Landmark had a duty to defend. And the insureds have incurred defense costs from that point in time until the present or until such time as even an amended complaint would be filed. And they at no point have waived any sort of right to defense costs for that time frame and, in fact, have claimed not only the right to recovery for those defense costs but also extra-contractual claims against Landmark. So you're saying if you, let's assume the Court grants the motion to amend, this is not a moot case then? That's correct, Your Honor. Unless the insured would withdraw its claim for coverage for the time period in which the original complaint was filed to the point in time when the amended complaint was filed, yes, this is still a case that this Court should address. Okay. All right, you can proceed to your argument. Thank you, Your Honor. Getting to the merits of the issue and the threshold question of the application of the reasonable expectations doctrine, I think it's important to note that that's a very narrow exception that the Pennsylvania courts have fashioned in the duty to defend context. The general rule is looking to the intent of the parties as explained by the language of the policy that was bargained for and agreed to by the parties, by the insured and the carrier. Looking to that language, generally, the court is allowed to determine the intent of the parties and the scope of coverage available under the policy. Now, the Pennsylvania Supreme Court has fashioned that narrow exception under the reasonable expectations doctrine in very limited circumstances, most notably in the context of an ambiguity in the policy or where the insurer changes the language of the policy after receiving some request for coverage from the insured, whether it be in an application for insurance or in consecutively issued policies of insurance. The first decision of this court that adopted the reasonable expectations doctrine was in Venslum Township in 1994, which involved a change between a first policy and a second policy in the language of exclusionary language applicable to a claim. And this court ruled that the district court should have allowed the policyholder to pursue discovery on its reasonable expectations in light of the change in policy language. In doing so, the court referenced the Pennsylvania Supreme Court decisions in Standard Venetian Blinds and Tonkovich and found those to at least be the starting point for the discussion of the scope of the reasonable expectations doctrine. Standard Venetian involved a claim where the policyholder claimed that it didn't necessarily understand the language of the policy or believe that the scope of coverage was broader than what the insurance company, how they interpret the policy. And the Pennsylvania Supreme Court said that that's not enough to invoke the reasonable expectations doctrine, that we still look to the language of the policy to determine the party's intent and pursuant to the language of the policy in that particular case, coverage was not available for the insured. Tonkovich distinguished Standard Venetian Blinds. In that case, the Pennsylvania Supreme Court said, in that case, we've got a little bit of a different circumstance because the insurer in Tonkovich unilaterally changed policy language without explaining the impact of the change to the policyholder. So in that case, the court said, unlike in Standard Venetian, it's important for us to look to what the insurance company did in explaining these changes to the policyholder and in that context, understanding what the reasonable expectations of the insured are in light of that particular change. So five years later in medical protective, this court continued to apply the reasonable expectations doctrine and found the particular policy language at issue there to be ambiguous. They found that the nature and scope of a policy exclusion was ambiguous and that along with the application for insurance submitted by the policyholder allowed the court to then consider the reasonable expectations of the insured to determine the scope of coverage. And then five years later again in UPMC, the court once again recognized that there is an inherent danger that the insurer will agree to certain coverage when reviewing the insured's application and unilaterally changing the terms of the policy after that fact to the insured's detriment. In that context again, the court said, let's look to what the reasonable expectations of the policyholder are because the insured changed the policy language. So again, the theme here is that we only look to the insured's reasonable expectations when the insurer in some way changes the language or terms of the policy to the insured's detriment. That did not happen here. As the court has recognized, this is one particular policy form that was extended at some point in time, but at no point in time did Landmark at all change the language of the policy. So when I asked your friend that question, he pointed us to Murphy. What is your reply? Correct, Your Honor. Murphy is a district court decision that did involve changed policy language and the district court was somewhat unclear about the impact of that changed policy language from one policy term to the next. Initially, the court found that the acceptance of a defense of a prior case under similar circumstances allowed the court to look to the reasonable expectations of the insured. I would first offer that that was wrongly decided, Your Honor. I don't think that expanding the reasonable expectations doctrine to that particular circumstance was proper, but the court even recognized in a subsequent decision, the Murphy court said, that they admittedly adopted an expansive view of the court's rule on when the reasonable expectations doctrine should apply. So I think that the more appropriate inquiry here is that, again, this is the exception, not the norm. To introduce the reasonable expectations of the insured in every particular insurance dispute kind of subverts the importance of the language of the policy that the parties have agreed to. It's important to understand that that's where the disputes should focus on, that these are commercial entities that have agreed to policy language, and to allow, in every particular instance, a policyholder to suggest that its reasonable expectations should play a role in the equation of whether coverage is available, opens up the door to just throwing the policy language out the window. Let me ask you a question. Are there any circumstances under which you'd agree that a prior coverage decision would create a reasonable expectation of future coverage under a policy? I think that in most situations, the answer is that every particular claim is different. And so I find it difficult to hold an insurer to always be required to provide coverage in one case as compared to the next because change policy language, change law, change nature of the underlying claims. But I think the other important issue there is the way in which the insurer handled that first claim. Ultimately, there may be an opportunity for a policyholder to claim some form of estoppel based on the insurer's actions, if it's a related claim or something along those lines. But if the insurer takes the proper steps of informing the insurer that it is properly reserving its rights, that it's not necessarily committing, that it owes coverage for the claim, but is providing a defense subject to an explicit reservation of rights, I think that's a very important step in the process. It advises the insurer that the carrier is not admitting or acknowledging coverage whatsoever for the claim. And that's exactly what happened here in the Erudea action, which contains important distinctions from the Castillo claim. But your friend points out, I mean, it's sort of a bottom line thing. His client found out that you were representing them and maybe doesn't know all the niceties of reservations and things that lawyers do. Does that create a reasonable expectation of coverage? I don't think so, Your Honor. These are two commercial entities that have agreed to, A, the terms of the policy and understand that there's a nature of dispute about whether coverage exists under the policy. And that's the function of a reservation of rights letter. To not allow a reservation of rights letter to have any impact whatsoever on future negotiations in the underlying suit at issue or any other matter would just simply disregard the effect of a reservation of rights letter. But it's an important document in the context of an insurer providing a defense. It advises the insured that the insurer is not conceding to coverage whatsoever. So I think that that reservation of rights letter, unlike the appellant's counsel, I believe that that's a very important document. And it's something that if the policyholder doesn't understand, it should retain somebody on its side, whether a broker or otherwise, to provide counsel to it as to what exactly that means. But I think in black and white terms, that letter specifically spelled out why there were not coverage for a majority of the claims that were asserted in Euridia, if any of them. So I think that that is an important document and is an important part of this particular transaction. So I think getting back to the role of the reasonable expectations doctrine in this particular case, this is not a situation in which that doctrine should be invoked or applied. At the end of the day, the parties agreed to the terms of the policy. At no point in time did Landmark change the terms of the policy to the insured's detriment. To allow the reasonable expectations to bleed into this discussion opens up the door to every policyholder coming forward and saying that something happened in the past that gives me the impression that the carrier will provide coverage here. Are you aware of any cases where a court has said it's a jury question whether these expectations were reasonable? I'm not aware of a case, Your Honor. But I do think that to the extent that the doctrine would be applicable in the situation where policy language does change, I think then it does become a question for the jury about. Agreed on that point. Correct, Your Honor. I think if you were to get across that threshold issue, I think presumably it's a question for the jury about, you know, unless I guess the facts involve a dispute where no reasonable insured would consider, you know, the insurer's actions to create that reasonable expectation of coverage. But normally I would think that would be a question for the jury. Do you think this is one of those cases where no reasonable insurer would think that his expectations are reasonable? No, Your Honor, I don't. Again, I don't. The policy language wasn't changed, so the reasonable expectations of the insured don't enter the equation. And even if for some reason it was a part of this discussion, I think it's clear that based on landmarks conduct and accepting the defense of the prior action under reservation of rights, I think there's no basis for the insured to maintain that it was reasonable for it to expect coverage for all potential claims that may involve some similar circumstances at some point in the future. I don't believe that's reasonable, no. Is your position we shouldn't even consider the reasonable expectations doctrine here? Because it just doesn't get past the four corners rule and the exception simply doesn't apply? Or that in considering and applying the reasonable expectations doctrine, it doesn't carry the day? Do you see the difference? I do see the difference, Your Honor. I think it's the former. The reasonable expectations doctrine does not apply. I think in order to invoke the reasonable expectations doctrine, they would have had to plead an ambiguity in the policy or establish some sort of ambiguity in the policy. Or a change. Right. Or a change in policy language. And so we don't even get to that. Or some deception, I suppose. Deception in the context, I think, of the changed policy language. Again, I think the focus of the Pennsylvania Supreme Court and this Court's decisions has been to try to identify those circumstances where an insurer has accepted premium based on certain discussions or representations about the scope of coverage, and then the policy form itself, the language of the policy deviates from those communications. So I think deception in the form of changed policy language. I'm sorry. Maybe Judge Porter already asked this, but the four corners rule, does that bar us from looking at the ERETA matter? Well, I would. More specifically, your adversary said it's really a matter of the totality of the circumstances. Are we barred from looking at the ERETA matter, or do we consider that in our analysis? No, I don't think it should be considered at all. I think the four corners doctrine says comparing the policy to the underlying complaint is the proper way to determine coverage for the underlying complaint. The only way to deviate from that and involve the ERETA matter in the Court's consideration is to invoke the reasonable expectations doctrine. But to do so would be improper here, because, again, it opens the door for policyholders across the board to always maintain that they had an expectation that they claimed was reasonable, which would be a question for a jury, as to the available coverage under the policy. At that point in time, the Court's left to just allow the parties to pursue discovery on what exactly happened in the underlying transaction that supposedly created that reasonable expectation. But that's not at all what the Pennsylvania Supreme Court said. Do you have anything more, Counselor? No, Your Honor, unless there's any other questions. Judge Porter, do you have anything more? Judge Roth? Okay. I didn't mean to cut you off. I thought you had finished. Thank you, Counsel, for your excellent argument. We'll hear rebuttal. Words versus actions. Blah, blah, blah. I'm not saying that a policyholder doesn't have an obligation to read his policy and to seek out counsel and try to understand these things. But I am saying that when you, the insurance company, cover a claim under the same policy and that claim is even more difficult to find coverage than the current one that you're looking at, then that action says to the policyholder it's covered, right? When the first one, when the Arruti is covered and the insurance company, the policyholder sees that, he says, all right, that's good. And then the insurance... The reservation of rights makes no difference, you said? That's exactly why I said words mean, or actions mean more than words. And what I'm saying is that the reservation of rights is there, and he has an obligation to understand that. I don't dispute that. What I am saying is that after that reservation of rights issue, the insurance company never said anything other than, yep, we'll pay. In some contexts, actions mean more than words, but I'm not sure that's right in the insurance coverage context, is it? That's why reasonable expectations was created, because insurance policies are so complicated and insurance companies, I don't want to throw them all under the bus, but insurance companies had an opportunity because of their advantage of understanding the policies, having written the policies and doing nothing but interpreting these policies all day long. And so that's what the reasonable expectations document is intended to protect. If you want ambiguity in the policy, the ambiguity comes from the insurance company itself. Somehow or another, they interpreted that policy to cover Arrutia. But then it's not covered. If we go with you on this, are we sort of creating a new cottage sort of cause of action where discovery, you know, you engage in or folks in your position will engage in extensive discovery to find out where coverage was graded and not and comparing and then bringing it to the court to say it's like this and the other side said it's not like this. It seems that maybe an expansion, this may be an expansion of the doctrine and maybe one that's not so well advised. What do you think? I don't think it's an expansion of the document. I think it's fully in keeping with UMPC, this court's decision in UMPC. And I think that there are many situations where the claim is clear and the four corners satisfies. But there are situations where there is a reasonable expectation on the part of the insured. And in this case, at this stage of the pleadings, 12B6, we should at least be given, we pled reasonable expectations in our declaratory judgment action. We should be able to conduct discovery on the issue. I'm not saying that we actually win at summary judgment or at the end of some trial, but what I am saying is that we should at least be able to take discovery. If you read the complaint, we've pled reasonable expectations. And if we've pled reasonable expectations, then we should not be bounced out of court on 12B6. We should receive discovery. Thank you. Thank you. Thank you, counsel. Appreciate it. Thank you. We thank counsel for their excellent arguments today and their briefing. And we will take the case under advisement. Thank you and wish you good health and a happy Sunday.